UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH GIAMBALVO,

    Plaintiff,

v.                                                     Case No.:  2:23-cv-91-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# **ORDER**

Plaintiff Joseph Giambalvo challenges the Commissioner of Social Security's decision denying his application for disability benefits under 42 U.S.C. § 405(g). (*See* Doc. 1.)[1] The procedural history, administrative record, and law are summarized in the parties' briefs (Docs. 10, 17, 21) and not fully repeated here.

Giambalvo raises one issue on appeal—whether the administrative law judge ("ALJ") properly considered medical opinion evidence from Dr. Yvette Mallory. (Doc. 17 at 11.) The Commissioner claims there is no error. For the reasons below, the Commissioner's decision is affirmed.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court has explained that "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the

absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

Turning to the facts of this case, the ALJ found Giambalvo had several severe impairments, including: "left eye injury with ruptured globe and corneal laceration in 2014; lumbar degenerative disc disease; hypertension; obesity; anxiety with agoraphobia; depression; bipolar disorder; posttraumatic stress disorder; and alcohol use disorder." (Tr. 19.) Still, according to the ALJ, Giambalvo retained the residual functioning capacity ("RFC") to perform "light work" with additional physical limitations such as "no climbing of ladders, ropes, scaffolds." (*Id.* at 24.)[2]

After considering the RFC and testimony from a vocational expert, the ALJ determined that Giambalvo could not perform past relevant work, but he could perform other jobs. (Tr. 34-35.) Because Giambalvo could work, the ALJ found he was not disabled as the term is defined in this context. (*Id.* at 36.) The

---

[2] An individual claiming disability benefits must prove he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Commissioner denied further administrative review, and this lawsuit timely followed. (Doc. 1.)

As mentioned, Giambalvo argues the ALJ erred in assessing medical opinion evidence from Dr. Mallory. (Doc. 17 at 11.) A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization and 5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Mercado v. Comm'r of Soc. Sec.*, No. 6:22-CV-287-DCI, 2023 WL 145154, at *1 (M.D. Fla. Jan. 10, 2023).

Supportability and consistency "are the most important factors" in determining persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for [each] medical source's medical opinions." *Id.* Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion. *Thomas v. Comm'r of Soc. Sec.*, No. 6:21-CV-100-EJK, 2022 WL 14816626, at *2 (M.D. Fla. Aug. 3, 2022).

4

"Supportability" refers to how well a medical opinion is bolstered by objective medical evidence and explanations provided by the medical source giving the opinion. "Consistency" is a measure of how the medical opinion aligns with evidence from other sources (medical and nonmedical). 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

Dr. Mallory treated Giambalvo over several years. Pertinent here, she completed "a residual functional capacity questionnaire regarding [his] mental health." (Doc. 17 at 8.) In the questionnaire, Dr. Mallory found Giambalvo had extreme limitations in his ability to work in coordination with or in proximity to others. She also found marked limitations in Giambalvo's ability to accept instructions, respond appropriately to co-workers or peers, and maintain socially acceptable behavior. (Tr. 1126-27.) She similarly opined that Giambalvo could not complete work tasks in a normal workday at a consistent pace or work in proximity to others without being distracted. (*Id.*) Ultimately, Dr. Mallory concluded that Giambalvo's "condition is likely to deteriorate if he is placed under stress, particularly that of a job." (Doc. 17 at 10.)

The ALJ rejected Dr. Mallory's opinions, explaining:

> [they] are not persuasive because they are either inconsistent and/or not supported by the record as follows. The opinions are not supported by the doctor's treatment notes and mental status exams, which consistently indicate the claimant's risk assessment is low with respect to self, others, and high-risk behaviors. The doctor did not complete a mental status exam at every appointment session and the last mental status exam appeared to be

5

performed on August 21, 2019. At this time, his hygiene was fair – not disheveled, poor, or malodorous. Eye contact was fair to poor; attention was inconsistent – not limited or severely impaired; activity level was restless; he was hyper-responsive and hypervigilant; mood was sad, anxious, irritable, and tearful; and affect was within normal range. He was fully oriented and had no hallucinations or delusions. Thought processes were obsessive and associations were intact. Short-term and long-term memory were intact, and insight and judgment were fair. He was cooperative and accepting of help from the doctor. He denied suicidal/homicidal ideation, plan, or intent. The opinion is not supported by other mental status exam findings in the record. On March 12, 2020, the claimant underwent an intake assessment at Salus Care. On mental status exam, he was alert, wore appropriate attired and had unremarkable cleanliness/grooming. His behavior was unremarkable, and his attitude was cooperative. Self-reported mood was frustrated, hopeless, and sad. Affect was congruent to mood, appropriate to situation/content, normal intensity, and full range. Speech was within normal limits. Thought processes were logical and goal directed. Thought content and perceptions were normal. His ability to concentrate was normal and he was attentive. Immediate, recent, and remote memory were fair. Insight and judgment were good. While the claimant did report difficulties within his marriage at times, he generally reported good relationships and extensive support system with his immediate and extended family, church community, and socializing with a couple of friends. Overall, the record does not support the doctor's opinion of marked and extreme limitations and the opinion is inconsistent with mental status exam findings by other treating practitioners. The opinion appears to be largely based on the claimant's subjective reports, which were also extreme in nature at times but did not require more intensive or frequent mental health treatment/therapy; inpatient treatment; nor any voluntary or involuntary psychiatric hospitalizations. Moreover, the claimant was not compliant with following through with reestablishing with psychiatry for psychotropic medications, as recommended by Dr. Mallory despite his extreme statements regarding symptomatology and locally

6

> available sliding scale costs for psychiatric treatment and psychotropic medications.

(Tr. 33-34.)

Giambalvo first claims the ALJ failed "to draw a path between the evidence and his reasoning." (Doc. 17 at 11.) As best the Court can tell, Giambalvo is arguing the ALJ did not adequately explain the basis of his consistency and supportability findings.

The Court disagrees. To be sure, "[c]onclusory statements about consistency and supportability are insufficient to show that substantial evidence supports the ALJ's decision." *Mercado*, 2023 WL 145154, at *5. But conversely, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence." *Marone v. Comm'r of Soc. Sec.*, No. 2:14-CV-616-FTM-CM, 2016 WL 1253575, at *7 (M.D. Fla. Mar. 31, 2016). What matters is whether "a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of [the] medical opinions." *Works v. Saul*, No. 4:19-CV-01515-MHH, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021).

There is enough here for meaningful review. The ALJ discussed Giambalvo's testimony and subjective complaints, the medical treatment records, and his daily activities. (Tr. 24-34.) Then, in assessing Dr. Mallory's opinions, the ALJ referred to the record as already outlined and recited several

7

reasons for discounting her conclusions. (*Id.* at 33-34.) That is enough. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *4 (M.D. Fla. Apr. 6, 2021) (finding the ALJ's explanation was sufficient despite omitting explicit reference to "supportability" and "consistency," and referring to other medical evidence only generally); *see also Gracia Joyce v. Kijakazi*, No. CV620-074, 2022 WL 950887, at *4 (S.D. Ga. Mar. 1, 2022) (same).

Considering the record as a whole, the Court is satisfied the ALJ followed the regulations. As for supportability, the ALJ outlined how Giambalvo's activities and treatment history do not support the extreme limitations assigned by Dr. Mallory. The ALJ also explained that Dr. Mallory's opinions were conclusory and dependent on subjective complaints, which undercut their persuasiveness. (Tr. 34.) An ALJ may rely on this type of evidence when assessing supportability. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *Sanpedro v. Comm'r of Soc. Sec.*, No. 2:20-CV-968-MAP, 2022 WL 1284500, at *6 (M.D. Fla. Apr. 29, 2022).

As for consistency, the ALJ referenced a March 2020 mental status examination, just one month after Dr. Mallory completed her review, which contained unremarkable findings. (Tr. 33.) Among other things, Giambalvo reported a logical thought process and normal thought content. (Tr. 797-98.) Although not overly robust, this analysis is sufficient in light of the ALJ's

8

detailed discussion of the remaining medical records that undercut Giambalvo's claims. *See, e.g.*, *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, at *10 (M.D. Fla. Dec. 16, 2021).

Giambalvo separately complains that the "ALJ's rationale [is] selective." (Doc. 17 at 11.) To prove this point, he cites a litany of medical evidence that allegedly supports Dr. Mallory's assessment. (*Id.* at 11-20.) But this argument is a nonstarter. Resolving conflicting evidence is for the ALJ. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015). And "when there is credible evidence on both sides of an issue," as here, "it is the . . . the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984).

The question the Court must address is not whether some evidence supports Giambalvo's claim or Dr. Mallory's opinions. The relevant issue is whether substantial evidence (when viewing the record as a whole) supports the ALJ's conclusions. As the Eleventh Circuit has stressed, "[e]ven if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The ALJ's decision to reject Dr. Mallory's opinions is supported by substantial evidence, as shown by his extensive assessment and discussion of the medical evidence. "The substantial

9

evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence." *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020). Given this standard, the Court must affirm.

Considering the record as a whole, substantial evidence supports the ALJ's findings and Giambalvo has failed to show error. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and close the file.

**ORDERED** in Fort Myers, Florida on October 16, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record